CARAWAY, J.
 

 hln this case, the lessor claimed dissolution of the lease and eviction because of the defendant’s misuse of a hunting and fishing lease on rural property adjacent to the Ouachita River. The lessor claims that defendant and others had occupied the property as a campground and constructed permanent facilities on the property which were not authorized by the lease. The trial court found no violation of the lease justifying its dissolution and refused relief. Finding that defendant’s actions amounted to misuse of the lease premises, we reverse the trial court’s dismissal of the action and order injunctive relief concerning defendant’s future actions under the lease.
 

 Facts
 

 The plaintiff, Billy Tolar, acquired in late 1994 a tract of land consisting of 41.55
 
 *561
 
 acres adjacent to the Ouachita River. Additionally, from the testimony and a review of an aerial photo, the tract traverses La-pine Bayou at its intersection with the Ouachita River. Lapine Bayou is a large waterway as it feeds as a tributary into the river at the site.
 

 On November 2, 1995, Tolar granted the subject “Hunting and Fishing Lease” on the land to defendant, Robert Spillers. The lease was for a one-year term, renewable annually thereafter for 49 years, with a $300 yearly rental. The lease was recorded in the records of Ouachita Parish.
 

 The six-paragraph lease, which was prepared by Spillers’s attorney, provides in pertinent part as follows:
 

 III.
 

 Lessor agrees to provide hunting, fishing and other outdoor recreational activity privilege on the lease premises during the term of this lease to Lessee and Lessee’s guests.
 

 _bjv.
 

 In consideration of the lease for hunting, fishing and other outdoor recreational activity purposes, Lessee agrees to hold lessor harmless from any liability of whatever nature or description relative to the use of the lease property; this liability is not only as to Lessee or Lessee’s guests, but liability which may arise as it relates to any third party who may sustain either property or personal injury loss resulting from the use of the premises.
 

 V.
 

 The parties further agree that in the event Lessee constructs any buildings and/or other improvements he, or his heirs, shall have the right to remove such buildings and/or improvements. Further that in the event this lease is terminated for any reason, then Lessee shall have 6 months from the date of written demand to remove such buildings and/or improvements, in default of which, such buildings and/or improvements shall become the property of the land owner.
 

 Billy Tolar (hereinafter “Billy” or “appellant”) was married to Darbie Tolar (hereinafter “Darbie”) in 1966. Darbie testified that they are still married, although the evidence indicates that the To-lars were judicially separated in 1985. Darbie appeared individually in the petition and as Billy Tolar’s agent, and she additionally claims a community property interest in the property.
 
 [1]
 
 Billy, age 86, resides in a Texas nursing home, and the record reflects he was incapacitated at the time of trial. Before his recent residency at the nursing home, Billy had lived in Texas with his two daughters since 1997.
 

 This action was brought as an eviction proceeding. The petition to evict Spillers alleged that he breached the lease, as follows:
 

 Is*By using the property as a campground, renting spaces and dumping garbage and sewage on the ground and into the river;
 

 • Piling trash around the encampment;
 

 • Placing a gate on the property, denying lessor access;
 

 
 *562
 
 • Posting the property and nailing Posted signs into numerous trees;
 

 • Placing water lines and light poles on the property;
 

 • Maintaining an open sewer pond on the property;
 

 • Maintaining a concrete boat ramp on the property; and
 

 • Burning trash on the property.
 

 At the trial in April 2005, Spillers testified concerning his obtaining the lease from Tolar in 1995. He detailed his activities and those of his family and friends on the lease, and he reviewed photos of certain structures placed on the property. He denied ever renting out campsites to others. Spillers described his work constructing a pier, dock and concrete ramp in the months immediately before the parties’ execution of the written lease in the fall of 1995. He testified that at that time, Billy was residing there on the property in a travel trailer. During this early period of the parties’ relationship and lease, Spillers and his family members would move onto the property in their travel trailers on weekends during the spring and summer months for fishing on the bayou and river. The trailers were self-contained, and without water service for the property, the parties brought their own water for use. As time went by, Spillers extended the existing electrical service for access by the trailers, and he claims that Billy also used this electrical service before he left the area by 1997. Spillers also began using “55-gallon drums” and a filtering system for sewage. Nevertheless, Spillers admits that in the first few years of the lease, he did not use the property extensively because his wife was ill. As for hunting on the |4property, no one testified that Spil-lers utilized the property for hunting. The two to four-acre area of the tract where the disputed activities occurred was near the bayou and was utilized as a fishing camp.
 

 By approximately 2000, the accommodations for overnight occupancy of the property had been enhanced by Spillers’s installation of water and an oxidation pond for sewage. About that time, a friend of Spillers, Jared Medaries, constructed a sizable mobile home permanently set on cinder blocks on the property. The electricity and water utilities were apparently in the name of Spillers. The water and sewage improvements permitted other trailers to stay on the property constantly throughout fishing season. Spillers indicated that in the fall, these trailers were moved elsewhere for deer hunting. Me-daries resided in his home on the property and this apparently caused the Tolars to first contest this use of the property in late 2000. Letters from their counsel were then mailed to Spillers. Darbie testified that in 2001, Billy considered eviction proceedings but ultimately took no action because of the legal costs and the removal of some structures from the property, including the Medaries’ home.
 

 There were permanent structures remaining on the property at the time of trial. One was a 12-foot by 32-foot trailer on cinder blocks which Spillers referred to as his camper. He also described an aluminum shed under which Spillers’s brother parked his mobile home. A freezer and washing machine were kept under the shed. Various photos were introduced by the parties, but it was unclear when the photos were taken. The defense photos, apparently taken near the time of trial, showed that |fisome trash and junk pictured in earlier photos had been cleared from the property.
 

 At the close of trial, the trial court ruled in Spillers’s favor, finding no breach of the lease. The court cited paragraph 5 of the lease as authority for the right to construct buildings and improvements on the
 
 *563
 
 property, including the oxidation pond. The court found that Spillers had not rented the property out to others as a campground. The eviction action was dismissed, and this appeal followed.
 

 Discussion
 

 The appellant as lessor claims a breach of the lease
 
 [2]
 
 concerning the lessee’s obligation under Civil Code Article 2683(2) “to use the thing as a prudent administrator and in accordance with the purpose for which it was leased.” Tolar seeks the remedies for misuse of the lease premises addressed under Civil Code Article 2686, as follows:
 

 If the lessee uses the thing for a purpose other than that for which it was leased or in a manner that may cause damage to the thing, the lessor may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained.
 

 Both of these articles turn on the purpose or intended use for which the lease was granted, and in this case, the language which must be considered for the determination of the lease purpose defines the lease “for hunting, fishing and other outdoor recreational activity.” In
 
 Tullier v. Tanson Enterprises, Inc.,
 
 367 So.2d 773 (La.1979), our Supreme Court said:
 

 |fiThe lease itself may expressly provide the purpose for which the premises are leased and for restrictions on the use of the leased premises. However, in determining the “intended use” under the lease, the courts may, in the absence of express lease provision, look to the surrounding circumstances, such as the nature, situation and previous use of the property.
 

 Id.
 
 at 775-776 (internal citations omitted).
 

 The Civil Code provisions for the interpretation of contracts which have application to this dispute are, in pertinent part, as follows:
 

 La. C.C. art. 2047
 

 The words of a contract must be given their generally prevailing meaning.
 

 La. C.C. art. 2051
 

 Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include.
 

 La. C.C. art. 2053
 

 A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.
 

 La. C.C. art. 2054
 

 When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
 

 La. C.C. art. 2055
 

 Usage, as intended in the preceding articles, is a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.
 

 |7La. C.C. art. 2056
 

 In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.
 

 Lease cancellation is not favored. A lease will be dissolved only when a les
 
 *564
 
 sor proves clear entitlement to dissolution.
 
 McCrary v. Park South Properties,
 
 560 So.2d 38 (La.App. 2d Cir.1990),
 
 writ denied,
 
 563 So.2d 1156 (La.1990);
 
 Housing Authority of Town of Lake Providence v. Burks,
 
 486 So.2d 1068 (La.App. 2d Cir.1986);
 
 Atkinson v. Richeson,
 
 393 So.2d 801 (La.App. 2d Cir.1981). Concerning the lessee’s misuse of the lease premises and the lessor’s remedies for injunctive relief, dissolution, and damages, the Revision Comment (b) to Civil Code Article 2686 states, in part:
 

 However, the actual granting of relief, as well as the choice of the appropriate relief, is left to the discretion of the court upon proper weighing of all the circumstances of the particular case. Depending on the circumstances, the court may decide to grant none, one, any two, or all three of the remedies described in Civil Code Article 2686 (Rev. 2004).
 

 From our review of the record, the trial court in its discretion could deny the remedy of dissolution of the lease and total eviction in this case. Nevertheless, as will be discussed in detail below, we observe from the record that Spillers used the lease premises for purposes not intended under the lease, so that misuse of the premises has occurred. We find that certain actions by Spillers beyond the intended use of the lease premises have violated the lease, and the trial court erred in not addressing and remedying such breach of the lease. Therefore, this court will interpret the lease and enjoin Spillers’s future actions, choosing also not to employ the harsh |sremedy of total dissolution of the lease. With such action, the appellant is restored to his right of possession, effecting an eviction over that portion of the lease premises which was subjected to the lessee’s misuse. This is in keeping with the scope of the eviction proceeding under La. C.C.P. art. 4701 for the termination of the lease “for any ... reason.” See Official Revision Comments (a) to La. C.C.P. art. 4701. Even though the court may choose not to terminate the lease entirely by dissolution, the lessee’s overreaching use or misuse of the lease premises can be ended and the lessor’s right of use recovered.
 
 [3]
 

 In reaching our conclusion, we first reject Spillers’s overbroad interpretation of the rights extended to him “for hunting, fishing and other outdoor recreational activity” on this particular tract. The “hunting” right of use, without any other specification for that right in the lease, can be understood generally as contemplating a limited use. Hunting is not a year-round activity, and the hunting of deer or squirrels on this wooded rural tract would not be expected to accommodate many hunters as Spillers’s guests. The structures expected for such hunting would be limited to the typical deer stand. Most importantly in this case, the disputed facilities constructed by Spillers on the property were not utilized for hunting since very little, if any, hunting occurred.
 

 The lease’s “fishing” right of use is more problematic for interpretative purposes because of the apparent lack of any private lake | flcomprising a part of the lease premises. Fish are not caught on the lease premises; they can only be caught by utilizing the lease premises for access to the two public bodies of water adjacent to the property. Although we accept this interpretation of the “fishing” right of use extended by the lease, it is significant to note that this “fishing” or access right of Spil-
 
 *565
 
 lers would not be his exclusive right since the lessor should also continue to have access to the river and bayou for various reasons, including fishing.
 

 The interpretation of the grant of the “fishing” rights as an access right is required to lend this fishing lease purpose and meaning. Nevertheless, Spillers desires that this naked grant for “fishing” be broadly interpreted so as to include as a leasehold incident to fishing, the right to construct permanent structures for the fisherman’s occupancy and habitation of the lease premises. With only the grant of use for “fishing” as expressed in the lease, which was prepared by Spillers’s attorney, we decline to make such an expansive interpretation. La. C.C. art. 2056. Only Spillers’s concrete ramp, pier, floating dock and a reasonable storage facility to accommodate the launch or access right would be generally understood as necessary for the lessee’s enjoyment of the “fishing” right under the lease. The ramp and dock were constructed by Spillers shortly before the lease was executed, and this action by the parties provides meaning for the “fishing” right of use which was contemplated.
 

 Under this interpretation of the lease’s fishing and hunting rights, and unlike situations in certain other leases, the lessor may continue to enjoy possession and utilization of the lease premises throughout the existence of |inthe lease. Spillers’s right of possession is necessarily limited and not exclusive, since appellant may also enjoy some concurrent uses of the property, as well as continue to use the property for all activities other than hunting. With hunting season closed, the lessor’s right to normal use and occupancy of his property is expected since his activities, such as managing timber, would not interfere with hunting. The fishing right allows Spillers access across the property to the boat launch area, therefore entailing limited use of the premises. Appellant’s use of the property, given its nature as a wooded rural tract, is not seriously impeded by the particular hunting and fishing rights granted under this lease.
 

 Regarding the phrase “outdoor recreational activity,” we likewise find no authority from this language allowing the disputed structures which have been placed on the property. Spillers’s camper, which is placed on a pier foundation on the property, provides him “indoor” accommodations.
 

 Our construction of this “fishing” lease for a determination of its intended use does not end, however, merely upon examination of the lease language itself. Fishing is a very general term, and as discussed above, it must be construed in the present context as a right to launch from the lease premises for fishing on the public waterways. Therefore, beyond the limited and general expression for the right for “fishing” stated in the contract, the cited authorities allow for the review of the extrinsic evidence of the parties’ intent from the surrounding circumstances and the conduct of the parties before and after the formation of the contract. La. C.C. arts. 2051 and 2053;
 
 Tullier v. Tanson Enterprises, Inc., supra.
 
 In this regard, we find that the |T1trial court was clearly wrong and manifestly in error in its ruling that the
 
 permanent
 
 structures placed by Spil-lers on the lease premises were an intended use of the property under the fishing lease.
 

 From the parties’ actions, the evidence does reveal that overnight camping related to fishing on the public waterways was occurring when the lease was executed and was intended as a use of the lease by Billy and Spillers. Nevertheless, it is clear from their initial actions that such camping was conducted in self-contained travel
 
 *566
 
 trailers and enjoyed by Spillers and his guests incidental to their boating and fishing recreation on the Ouachita River and Lapine Bayou. Spillers acknowledged in his testimony that Medaries’s permanent living arrangement on the property, which was clearly not incidental to fishing or hunting, went beyond the rights extended under the lease. Accordingly, we find that the permanent structures now remaining on the property violate the scope of the camping rights which were intended by the parties. Those structures remain at the site even though no boats are present and no fishing is occurring. A permanent injunction is hereby granted preventing such use of the property and requiring removal of those structures by Spillers.
 

 The Medaries’ camp house and other evidence also disturbingly showed that the meaning of the phrase, “Lessee’s guests,” as used in the lease, has been misconstrued. Spillers indicated that he was initially unaware of Medaries’s actions in placing the large mobile home on a foundation on the property and residing there. His testimony indicated that actions by some of his family members and other friends occurred at the site | ^without his presence and knowledge. Although the “fishing” rights on the river and bayou are in a certain sense unlimited, so that a huge number of “guests” might launch their boats and camp throughout the 41-acre tract, we do not find that Billy and Spillers intended the launch and incidental camping rights to be quite so extensive. The fact that Billy initially occupied the premises, enjoying coextensive use of the property with Spillers, indicates that unattended guests were never intended. The use of the property for camping therefore should be limited to the area immediately around the launch and for the travel trailers of the lessee and a reasonable number of lessee’s guests.
 

 The last issue concerns the utility service and the oxidation pond. Appellant chose not to bring an ordinary action for damages to the property regarding the installation of these utility services. The use of the electricity and water to accommodate the lessee is not unreasonable so long as the expense for that service is paid by Spillers. The sewage installation shall no longer be used for permanent dwellings in view of the limitation we place upon the camping activities on the lease premises.
 

 Conclusion
 

 In summary, while we find that a breach of the lease has occurred by defendant’s misuse of the lease premises, the dissolution of the lease is not warranted. Instead, the following injunctive relief is hereby ordered, adjudged and decreed:
 

 (i) Defendant, Robert Spillers, is enjoined from the construction and occupancy of permanent structures built on or moved upon the property, except for the existing pier, dock, launch and a reasonable storage facility for the launch; and
 

 11s(ii) Defendant, Robert Spillers, is ordered as a mandatory injunction to remove the existing permanent facilities constructed by him on the lease premises.
 

 Defendant’s use of the lease premises for camping shall be limited to the area immediately around the existing launch and in the self-contained travel trailers of the lessee and a reasonable number of lessee’s guests.
 

 Costs of these proceedings are assessed to Robert Spillers.
 

 REVERSED. JUDGMENT RENDERED.
 

 [1]
 

 . Darbie makes no assignment of error or further claim that the lease required her execution in order to be valid. Whether she has a community property interest in the property need not be resolved since Billy, as the party who executed the lease, may seek its dissolution or enforcement.
 

 [2]
 

 . Tolar brought the action as a summary proceeding for eviction which, under La. C.C.P. art. 4701, may be brought for the termination of the lease "for any ... reason.”
 

 [3]
 

 . Spillers's counsel understood the scope of the proceedings to include any order by the court modifying Spillers’s use of the property. He asked his client directly whether he was prepared to follow any such order by the court.